UNITED STATES of America,

v.

Clarke LASKY, Defendant.

No. CR 97–127 (ADS).

United States District Court,
E.D. New York.

Oct. 28, 1998.

Zachary W. Carter, U.S. Attorney, E.D.N.Y., Brooklyn, NY by Joseph R. Conway, Assistant U.S. Attorney, for U.S.

John F. Carman, Garden City, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On January 23, 1998, the defendant, Clark Lasky ("Lasky" or the "defendant"), was convicted, upon his plea of guilty, of: (1) one count of knowingly, intentionally, and willfully embezzling and converting the assets and funds connected to an employee welfare benefit plan, in violation of 18 U.S.C. § 664; and (2) one count of mail fraud, in violation of 18 U.S.C. § 1341. Title 18, United States Code, Section 664 is entitled "Theft or embezzlement from employee benefit plan." This section makes it unlawful for:

> Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the monies, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or any fund connected therewith.

On the date the plea was entered Lasky admitted that he embezzled the Brotherhood of Industrial Workers Health and Welfare Fund (the "BIW Fund"):

> THE COURT: Would you describe in your own words what you did in connection with the crime charged in Count 2 of the indictment ?
>
> THE DEFENDANT: On approximately February 1st of 1995, 1 as the president of Employee Health Plans received funds into my organization of which were within my control and I had failed to forward the monies that were also part of those monies to a trust fund, and I used it for the purposes of which have been to my own benefit.
>
> THE COURT: So the count says that you knowingly, intentionally and unlawfully embezzled funds connected to it to an employee health benefit plan to your own use; is that true ?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: You knew at the time that it was improper and illegal for you to do that ?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You knew you were a fiduciary at the time ?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: And this was in the amount of approximately $250,000 ?
>
> THE DEFENDANT: Yes, your Honor.

THE COURT: And you converted those funds to your own needs ?

THE DEFENDANT: Yes, your Honor.

On August 24, 1998 the Court, in a written decision, denied the defendant's motion pursuant to Rule 32(e) of the Federal Rules of Criminal Procedure seeking the withdrawal of his guilty plea. The Court adjourned the defendant's sentencing to September 4, 1998. On that date, prior to the imposition of sentence, the defendant raised an issue involving the interpretation of section 2F1.1(b)(1) of the Sentencing Guidelines. The defendant claims that the victim never suffered a loss and thus he should not receive an enhancement pursuant to section 2F1.1(b)(1).

In a letter to the Court dated September 26, 1998, the defendant contends that:

> not only was there no 'actual loss' to BIW at *any* time, there is substantial doubt as to whether the specter of a 'probable' or 'intended' [loss] could have resulted from Mr. Lasky's failure to turn over employer contributions. The substantial doubt is premised on the fact that the 'Fund' already had in its possession and control a 'reserve account' containing assets far in excess of any obligation owed to the fund by the EPHA. Lasky could not have caused a 'loss,' (actual, intended or probable), until the value of the diverted contributions exceeded the value of the account in the possession of the Fund. The creation of the reserve account by Lasky, which was in existence at the time of the offense, operated as an insurance policy that precluded even the possibility of a loss.

In essence, the defendant argues that because the BIW Fund had a "reserve account," the $690,495.42 that he admitted to embezzling from the BIW should not be considered a "loss" under the enhancement provisions of the sentencing guidelines.

The defendant's position is contrary to the Guidelines as well as the clear principles enunciated by this Circuit in *U.S. v. Brach*, 942 F.2d 141 (2d Cir.1991) and its progeny. Application Note 7 of section 2F1.1 states that the "valuation of loss is discussed in the Commentary to § 2B1.1." The Commentary to section 2B1.1 defines "loss" as "the value of the property taken." Moreover, Note 7 of Guideline section 2F1.1 states that, "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss."

In *Brach*, the Second Circuit held that "[i]n cases involving embezzlement or theft, we have interpreted Application Note 2 literally and affirmed sentencing adjustments based on the value of what was taken, not on the ultimate harm suffered by the victim . . . . Under the Guidelines, 'loss' includes the value of all property taken, even though all or part of it was returned" *Id.* 942 F.2d at 143 (citations omitted). Similarly, in *United States v. Arjoon*, 964 F.2d 167 (2d Cir.1992), the Second Circuit held that " 'Loss' is therefore, not the ultimate harm suffered by the victim, but is rather the value of what was taken." *Id.* 964 F.2d at 172 (citation omitted); *see also U.S. v. Mucciante*, 21 F.3d 1228 (2d Cir.1994) (holding that under section 2F1.1, loss does not always equal the actual financial harm suffered by the victim); *United States v. Matt*, 116 F.3d 971 (2d Cir.1997) (holding that under section 2F1.1, the intended loss, not the actual loss should be considered under the Guidelines).

Therefore, it is clear that the Guidelines and the Second Circuit's interpretation thereof, permit this Court to enhance the defendant's sentence pursuant to § 2F1.1 even if the victim did not suffer an actual loss. Thus, the Court will consider the $690,495.42 that was taken from the BIW Fund, irrespective of whether or not the reserve fund protected them from any actual loss. Accordingly, it is hereby

**ORDERED,** that Lasky's motion to vacate the enhancement under section 2F1.1(b)(1) of the Sentencing Guidelines is **DENIED.**

**SO ORDERED.**